# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF MINNESOTA

In Re:  Case No. 20-50120-RJK

Lucas James Bemboom,  Chapter 7

    Debtor.

**Affidavit of Mark Anthony Ratka, in Response to the Declaration of Lucas James Bemboom.**

STATE OF MINNESOTA  )
                                      ) ss
COUNTY OF WRIGHT  )

1. My name is Mark Anthony Ratka. I providing this affidavit in response to the Declaration of Lucas James Bemboom which he filed on March 24, 2020.

2. On April 1, 2020, I inspected the property subject to this dispute to confirm that the conditions that endangered the property have been remedied. For the reasons below, many of those conditions have not been remedied, the property is still damaged, and the conditions threaten the property from further damage.

3. In paragraph of my certification filed on March 9, 2020, I alleged that one interior door of the barn leading into the barn cleaner room was ripped off the hinges and destroyed. The door had been laying twisted inside the barn. The debtor, in paragraph A.5.a of his Declaration, alleged that the door is still there and it was inappropriate for the barn because it was too light duty to withstand normal wear and tear from the cattle. He further alleged that the cattle pass this door on the way to and from the rest of the barn and routine knock the door off its hinges. He claimed that he replaced the door with a heavier one. He provided a photograph which he captioned "rehung door" as support for his claim.

4. The reason that the cattle had been hitting the door was because the door know had been removed from the door, and without a doorknob, the door was allowed to swing open

allowing the cattle to hit the door. If he would have replaced the doorknob, the door would not have swung open and cattle walking by would not have hit the door. Cattle do not pass through this door. It is a service door for humans. The Debtor's photo captioned "rehung door" was a different door than originally installed. However, it was merely set in place and was not mounted with hinges. When I had inspected the property on April 1, the original door had been straightened and reinstalled with new hinges. There still remains no doorknob but the debtor has placed a bucket on the ground in front of the door to keep the door shut. This is not an acceptable repair. Exhibit 1 accurately depicts the door as it was on April 1, 2020. Exhibit 2 accurately depicts the door as it was on February 24th.

5. I alleged in my certification in paragraph 5.b. that one exterior door had been considerably dented to the point it would not shut properly. The Debtor, in his Declaration, alleges in paragraph 5.b. that the dents are "pings" caused by the horns and hoofs of cattle. The door closes just fine. He did not send any pictures of this door.

6. I inspected this door on April 1, 2020. This door remains dented, but it does shut properly now and it latches. The door had been newly installed prior to the debtor taking possession of the property.

7. I allege in paragraph 5.c. of my certification that prior to December 31, 2019, the Debtor had placed a large quantity of manure inside the barn and allowed the manure to remain in contact with and seep into wooden stud walls, wooden base plate, fiber board insulation and plywood sheathing and steel tin. This manure also contains animal urine. Although some manure had been removed from the barn, the manure had not been removed from the stud walls, base plate, fiber board insulation and plywood sheathing and those items cleaned and disinfected as of February 24, 2020. Without removing the manure and cleaning these items, the amount of damage will increase due to mold, rot, and existence of bacteria and odor. In addition, damage to the footings and stud wall can occur from expansion of the moisture from freezing and thawing. In his Declaration, the Debtor claimed that the manure is placed in a room specifically designed to hold manure. He alleged that the room has concrete block walls that come up about two feet from the concrete floor and manure is not in contact with wood, plywood or steel. The Debtor submitted a photos captioned " Manure room 1", "Manure room 2" and "Manure room 3" in support of his declaration.

8. This room is not designed to hold manure. This room is designed and intended to store and

shelter the barn cleaner and manure spreader from outside elements. The Debtor's photo captioned "Manure room 1" depicts a manure spreader properly housed in the room. The Debtor's photos captioned "Manure room 2" and Manure room 3" show why the manure endangers the property. Both photos show that a concrete footing extends approximately 16" up from the floor. Immediately on top of the footing is a wooden sill plate. Extending up from the wooden sill plate are wooden studs. Behind the studs is insulation which is depicted in the photo. Behind the insulation is plywood sheathing. Photo Manure room 3 shows the plywood in one panel where the insulation is missing. Both photos show a horizontal line several inches above the sill plate, below which the insulation is discolored. That discoloration on the insulation is the residue from the manure. This insulation, the sill plate, and the studs are contaminated from urine and feces and possibly bacteria from the manure. Although the Debtor has removed most of the manure, the sill plate, studs, and insulation clearly have not been bleached or otherwise decontaminated. I am afraid that the wood and insulation will deteriorate, the metal fasteners will rust, and there remains contamination in the area.

9. Upon my inspection of April 1, I found that the moisture in the manure had frozen. The frozen manure had expanded and pushed the exterior wall footing slightly. There now is a small gap between the footing and the concrete floor. Exhibit 3 depicts light coming in around the sill plate from the shifted footing. Exhibit 4 depicts the outside of this wall. The metal siding has bent out from manure being pushed through the footing. The photo also shows the manure which was pushed through the gap created by expanded frozen manure. Exhibit 5 depicts a stud that has shifted from the expanded frozen manure and light coming in from a gap that has formed where the frozen manure has forced the insulation, sheathing and siding to protrude outward. Exhibits 4 and 5 are on opposite sides of the same wall. Exhibit 6 depicts the concrete footing. It is not concrete block as alleged by the Debtor; rather it is concrete footing. It also is 16" high, not two feet. Exhibit 7 also depicts the level of manure along the insulation above the footing on the left side of the photo and on the tin to the rear of the room.

10. I alleged in paragraph 5.d. of my certification that two spots of overhanging tin of a lean-two on the west shed had been damaged, likely from the boom of a skid loader. The Debtor in paragraph A.5d of his declaration responded that the overhanging tin was damaged before he

took possession. Photograph captioned "bent aluminum" filed by the Debtor depicts this damage.

11. Exhibit 8 depicts the condition of the shed roof (upper right photo) at the time this property was appraised on September 12, 2016. The roof was not dented at that time.

12. The Debtor has replaced the 200 watt bulb with a standard bulb and has reinstalled the cover (paragraph 5.e. of my certification). I am satisfied with this repair.

13. The Debtor has repaired the exterior sliding door (paragraph 5.f. of my certification). I am satisfied with this repair.

14. The Debtor had cleaned up the property considerably (paragraph 5.g. of my certification). I am satisfied with this repair.

15. The Debtor has removed clutter of old parts, tools, and other objects in the garage (paragraph 6 of my certification). I am satisfied that it is sufficiently neat and orderly.

16. I alleged in paragraph 7 of my certification that the Debtor has not provided copies of renter's property and liability insurance required to be maintained by the debtor pursuant to the terms of the lease. In his declaration, the Debtor responded that the lease only obligates him to purchase content insurance. I agree. However, renter's policies contain liability insurance coverage. In addition, he has not provided me with proof of such content insurance despite numerous requests, including my certification filed with this court.

17. I checked the heat on April 1 and the furnace turned on. I am satisfied that the propane tank is not empty.

18. During my inspection of April 1, I observed new damage to the property as follows:
    a. The siding has been peeled away and a 2 x 6 stud has been split on the door jamb of the east side of the southeast corner of the barn cleaner room. Exhibit 9 accurately depicts this damage.
    b. The 2x6 door jamb is pulled away from another 2x6 which is supposed to be alongside it on the slider door on the east side wall of the barn cleaner room. Exhibit 10 accurately depicts this damage.
    c. The east garage door jamb aluminum trim has been damaged. Exhibits 11 and 12 accurately depict this damage along the jamb trim. Exhibit 11 is upper damage; exhibit 12 is lower damage.
    d. The bottom threshold and the side jamb of the garage service door have been damaged.

The door now does not seal above the threshold which will allow water and bugs to enter the garage. Exhibits 13 and 14 accurately depict the damage to the jamb and threshold. Exhibit 15 accurately depicts light that now enters the room because the door bottom weatherstrip is not meeting the threshold.

e. The handle and latch on the house storm door are missing. Decorative trim is damaged. Exhibit 15 accurately depicts the missing handle and latch (upper right corner of the photo) and damaged trim.

19. Based on the above, I believe that the property is not being maintained, future repair expense is increasing, and the property is depreciating in value. Conditions that endanger the property have not been eliminated.

## VERIFICATION

I, Mark Anthony Ratka, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Further your affiant sayeth not.

Dated: 4/1/2020

Signature *(Sign only in front of notary public or court administrator.)*

Mark Anthony Ratka
16039 110th Street
Foreston, MN 56330

Sworn/affirmed before me this
1st day of April 2020.

Notary Public/Deputy Court Administrator



CATHLEEN M KNIGHT
Notary Public
State of Minnesota
My Commission Expires
January 31, 2023